## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                              )        Chapter 11
                                                    )
CABLE & WIRELESS USA, INC., *et al.,*               )        Case No. 03-13711 (RB)
                                                    )        Substantively Consolidated
            Debtors.                                )
                                                    )        **Re: Docket Nos. 2050 and 2051**

## MEMORANDUM OPINION WITH RESPECT TO
## OPPOSITIONS TO THE FIFTEENTH AND SIXTEENTH OMNIBUS
## OBJECTIONS TO CERTAIN 2003 PROPERTY TAX CLAIMS[1]

The Trustee for the Omega Liquidating Trust (the "Trustee") created under the confirmed

chapter 11 plan of reorganization, filed Fifteenth and Sixteenth Omnibus Objections involving

2003 property tax claims of local taxing authorities listed on Exhibits 'A' and 'B' attached hereto

[Docket Nos. 2150 and 2151] (the "Objections"). In response to the Objections, the taxing

authorities filed various responses, to which the Trustee has filed a reply [Docket No. 2260] (the

"Reply").

Hearing on the Objections and responses was set for April 6, 2005. However, the tax

authorities complained that they had insufficient notice of the Objections[2] and therefore

requested time to file additional briefs together with time to take deposition testimony of the

Trustee's witness. Accordingly, the Court continued the matter with respect to the taxing

authorities' responses, granted the taxing authorities' requests and reset the hearing for May 5,

2005, and continued the hearing for the Florida taxing authorities to June 15, 2005. The Court

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law
pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] The Fifteenth and Sixteenth Objections were filed March 7, 2005.

1

advised the parties that certain issues raised by the taxing authorities would be decided by the Court in advance of the hearing after receiving memoranda from the taxing authorities. As noted by the Trustee's Reply, the taxing authorities advance five principle arguments, namely: (1) requests for abstention of the objections to state court or administrative agencies; (2) procedural and jurisdictional arguments; (3) valuation contests; (4) state sovereign immunity defenses; and (5) matters dealing with individual treatment of the objections (*e.g.*, amounts owed and classification of the claims, whether priority or secured).

Responses to the Trustee's Reply have been filed by St. Johns County, Florida Property Appraiser, on behalf of six responding Florida county appraisers, as well as Texas and Tennessee tax authorities. These responses argue that the pending proceedings require the filing of an adversary proceeding, that this Court lacks jurisdiction under the Eleventh Amendment to the United States Constitution since each county appraiser is an "arm" of the State, that the appraisers are not properly joined as parties to this proceeding and that venue should be transferred to a bankruptcy court in the State of Florida to cure improper joinder, or this Court should abstain from jurisdiction.

In order to resolve the Trustee's Objections in an orderly manner, I determined the jurisdiction and other issues should be resolved prior to the May 5, 2005 hearing, including the taxing authorities' responses based on the Eleventh Amendment sovereign immunity doctrine, abstention invoking section 505 of the Bankruptcy Code[3] and 28 U.S.C. section 1334, failure to join indispensable parties, improper joinder, change of venue and the proper legal standard for

---

[3] Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.*

appraisal of the 2003 properties.

A.    State Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by citizens of another state, or by citizens or subjects of a foreign state.

The Eleventh Amendment was adopted to overrule *Chisholm v. Georgia*, 2 Dall. 419 (1789),

holding a state was liable to suit by citizen of another state. After adoption, *Hans v. Louisiana*,

134 U.S. 1 (1890), held the Eleventh Amendment prohibits suits by individuals against states. In

certain cases Congress may abrogate the states' sovereign immunity under sections 1 and 5 of the

Fourteenth Amendment. *Seminole Tribe of Florida v. Florida ("Seminole Tribe")*, 517 U.S. 44

(1996). Footnote 16 of *Seminole Tribe*, responding to the dissent's view that the holding would

prohibit federal jurisdiction over suits to enforce bankruptcy laws, noted that position was

exaggerated. Following *Seminole Tribe*, and after Congress attempted to abrogate state

sovereign immunity by amending section 106(a), five circuit courts of appeal have held Section

106(a) unconstitutional. *In re Creative Goldsmith of Washington, D.C.*, 119 F.3d 1140, 1147

(4th Cir. 1992); *In re Nelson*, 310 F.3d 820 (7th Cir. 2002); *In re Fernandez*, 123 F.3d 241, 243-

44 (5th Cir. 1997); *In re Mitchell*, 209 F.3d 1111 (9th Cir. 2000); *In re Sacred Heart Hosp. of

Norristown ("Sacred Heart")*, 133 F.3d 237 (3d Cir. 1998). One circuit has upheld section

106(a). *In re Hood*, 319 F.3d 755 (6th Cir. 2003). As noted in *Sacred Heart*:

> Eleventh Amendment immunity, however, is not absolute. When, as here, a
> plaintiff seeks recovery only from the state, and not from its officials, there are
> two ways to divest a state of its Eleventh Amendment sovereign immunity and
> hale the state into federal court. First, a state may waive its Eleventh Amendment
> immunity and consent to suit in federal court.

133 F.3d at 242 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)).  The

second method involved Congress's abrogation of immunity where adoption is specific and

express under a valid exercise of congressional power, for example, *Seminole Tribe*'s decision on

the Fourteenth Amendment.

As to waiver of sovereign immunity in bankruptcy reorganization cases, it has long been

held since *Gardner v. New Jersey*, 329 U.S. 565 (1947), that:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy
> court by offering a proof of claim and demanding its allowance must abide the
> consequences of that procedure.  If the claimant is a State, the procedure of proof
> and allowance is not transmitted into a suit against the State because the court
> entertains objections to the claim.  The State is seeking something from the
> debtor.  No judgment is sought against the State.  The whole process of proof,
> allowance, and distribution is, shortly speaking, an adjudication of interests
> claimed in a res.  It is none the less such because the claim is rejected in toto,
> reduced in part, given a priority inferior to that claimed, or satisfied in some way
> other than payment in cash.  When the State becomes the actor and files a claim
> against the fund it waives any immunity which it otherwise might have had
> respecting the adjudication of the claim.

*Id.* at 573-74 (internal citations omitted); *see also State of Maryland v. Antonelli Creditors'*

*Liquidating Trust*, 123 F.3d 777, 786 (4th Cir. 1997) (holding that the liquidating plan binds state

taxing authorities despite the Eleventh Amendment because confirmation is not a "suit" against

the state even if the state did not appear in the chapter 11 case, since jurisdiction of the

bankruptcy court is jurisdiction over the debtor, its assets and creditors).

*Tennessee Student Assistance Corporation v. Hood ("Hood")*, 541 U.S. 440 (2004),

recently reinforced the rationale of the *Gardner* decision regarding *res* and *in rem* jurisdiction of

the bankruptcy court to defeat state sovereign immunity.  In *Hood*, the Court held the bankruptcy

court's *in rem* jurisdiction over the *res* and the bankruptcy court's exercise of its jurisdiction to

4

discharge debt does not infringe on state sovereign immunity.[4]  Id. at 447-48.

Other bankruptcy courts have relied extensively on *Gardner* in holding that a tax liability determination is not a "suit" within the scope of the Eleventh Amendment. *See, e.g., In re Psychiatric Hospitals of Florida, Inc.*, 216 B.R. 660, 661 (M.D. Fla. 1998).  The same is true of *Gardner*'s holding on waiver by filing a proof of claim. *In re NVR L.P.*, 206 B.R. 831, 851-52 (Bankr. E.D. Va. 1997), *aff'd in part and reversed in part*, 189 F.3d 442 (4th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000).

Moreover, political subdivisions of states do not qualify for Eleventh Amendment immunity. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890) (Immunity does not extend to counties and similar municipal corporations).  To circumvent such doctrine, the Florida taxing authorities argue that each taxing authority is an "arm of the state" and thus enjoys state sovereign immunity, citing *Christy v. Pennsylvania Turnpike Comm'n.*, 54 F.3d 1140, 1144-45 (3d Cir. 1995).  The party asserting such doctrine bears the burden of proof. *Id.* at 1144.  The criteria of such test is well settled in *Christy*, as well as in the cases of *In re Polygraphex Systems, Inc.*, 275 B.R. 408 (Bankr. M.D. Fla. 2002), and *In re L. Luria & Sons, Inc.*, 282 B.R. 504 (S.D. Fla. 1999), following Eleventh Circuit decisions that:

> Our oft-reiterated test entails three distinct inquiries: (1) whether, in the event the

---

[4] On April 4, 2005, the United States Supreme Court granted certiorari in *In re Wallace Bookstone's, Inc. v. Central Virginia Community College*, 106 Fed. Appx. 341, 2004 WL 1763229 (6th Cir. 2004), which followed *Hood v. Tennessee Student Assistance Corporation*, 319 F.3d 755 (6th Cir. 2003), holding that Article 1 of the U.S. Constitution grants Congress authority to abrogate state sovereign immunity on grounds the states ceded such authority to Congress under Article 1. Thus, the issue on application of the Bankruptcy Clause as abrogating state sovereign immunity in bankruptcy cases will now be addressed by the Supreme Court.

plaintiff prevails, the payment of the judgment would come from the state (this includes three considerations: whether the payment will come from the state's treasury, whether the agency has sufficient funds to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts); (2) the status of the agency under state law (this includes four considerations: how state law treats the agency generally, whether the agency is separately incorporated, whether the agency can sue and be sued in its own right, and whether it is immune from state taxation); and (3) what degree of autonomy the agency enjoys.

*Christy*, 54 F.3d at 1144-45 (internal citations omitted).

Citing two conflicting cases, *Polygraphex* and *Luria & Sons, supra*, one holding the county tax collectors and property appraiser was an arm of the state (*Luria & Sons*) and the other (*Polygraphex*) holding just the opposite, the Florida tax authority comes down on the side of *Luria & Sons*.

After considering the authorities cited by the Florida tax authorities, I conclude, based on the Supreme Court decisions of *Gardner* and *Hood, supra*, that these *in rem* proceedings seeking to adjust property values are not "suits" against the State. Further, as to all counties that filed proofs of claim, these counties clearly waived any defense of state sovereign immunity, even assuming those counties are an "arm" of the state. The other two counties are properly before the Court under the holding that this proceeding is not a suit against the state and this Court has *in rem* jurisdiction over the appraisals and therefore the tax authorities.

B.    Abstention under 11 U.S.C. section 550 and 28 U.S.C. section 1334

28 U.S.C. section 1334(c)(1) authorizes permissive abstention:

Nothing in this section prevents a district court[5] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a

---

[5]  A bankruptcy court is a unit of the district court.  28 U.S.C. § 151.

case under title 11.

Section 505(a) provides that the bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

As held in *In re Lipetsky*, 64 B.R. 431 (Bankr. D. Mont. 1986):

> In reviewing Section 505 and the authorities cited by each party, as well as other decisions, there is no conflict among the decisions regarding the purpose and meaning of Section 505. The determination of a debtor's tax liability is a core proceeding under Section 157 of the Code and this Court thus has jurisdiction to determine the amount and legality of the tax, except where such tax has been fixed by final order of an administrative of judicial tribunal, after being reasonably contested by the taxpayer. *In re Palm Beach Resort Properties*, supra [51 B.R. 363]. As stated in *In re Northwest Beverage, Inc.*, supra, at 46 B.R. 634-635:
>
> > Section 505 is derived from the Bankruptcy Act sections which allowed the Court to hear and determine questions concerning the amount or legality of unpaid taxes. Several Act cases have construed the language used in the predecessor Section to Section 505 to mean that:
> >
> > "[W]here after a hearing, a quasi-judicial body–determines the amount of tax due, with the right on the part of the taxpayer to a judicial review of the determination, al confirmable with the requirements of due process, such determination, <u>upon becoming final by operation of law</u>, is conclusive upon a court of bankruptcy, for mathematical error in the computations of the amount of tax or legal error in its assessment."
> >
> > Section 505 of the Bankruptcy Code and the predecessor Section in the Act were enacted to " . . . protect[s] the estate from the negligence or indifference of a debtor who has defaulted in tax assessment proceedings . . ." 3 <u>Collier on Bankruptcy</u>, 505-23 (15th Ed.). In enacting Section 505 Congress was primarily concerned with protecting creditors from the dissipation of the estate's assets which could result if the creditors were barred by a tax judgment which the Debtor, due to his ailing financial condition, did not contest."

*Id.* at 433-34 (internal citations omitted); *Accord, In re Custom Distribution Services Inc.*, 224

F.3d 235, 240 (3d Cir. 2000) (holding that the Bankruptcy Court is allowed to review tax claims even after the time has run under a state law prohibiting the taxpayer's right to challenge the assessment and tax).

There are two purposes for the enactment of section 505(a). One, noted above, is to protect the creditors from the dissipation of the estate assets occurring from the failure of the debtor to protest the tax. The second is to afford an alternative forum, the bankruptcy court, to allow prompt administration of the estate which would be otherwise threatened if the estate had to litigate the tax or assessment in several state jurisdictions. *In re Stoecker*, 179 F.3d 546, 549 (2d Cir. 1999) ("If federal courts could not determine the debtor's liability for state taxes – if they had to abstain pending a determination of that liability in state court – bankruptcy proceedings would be even more protracted than they are.").

The forum situation is plainly put in issue by the response to the objection of Duval County, Florida, which filed a proof of claim and highlights the dilemma of the estate, where the response states that under section 194.171(2) Florida Statutes, "no action shall be brought to contest a tax assessment after 60 days from the date the assessment being contested is certified for collection under 193.122(2)." The tax collector of Duval County certified the 2003 tax rolls for collection on October 19, 2003, which bar date for appeal expired December 18, 2003, and the debtor failed to pursue its state remedy, in spite of proper notification. As stated in *In re Piper Aircraft Corp.*, 171 B.R. 415 (Bankr. S.D. Fla. 1994):

> A bankruptcy court has authority to determine the amount of a debtor's tax liability, notwithstanding the debtor's failure to comply with state law procedures. *See, e.g.,* [*In re AWB Associates, G.P.*, 144 B.R. 270, 277 (Bankr. E.D. Pa. 1992)]; [*In re Warren Street Associates*, 143 B.R. 326, 329 (Bankr. E.D. Pa. 1992)]; [*In re Ledgemere Land Corp.*, 135 B.R. 193, 196 (Bankr. D. Mass.

8

1991)].

*Id.* at 418. In addition, *Piper Aircraft* further holds a debtor may seek relief under section 505

"notwithstanding the sale of the underlying obligation by a county to a third party." *Id.* at 419.

The memorandum filed by St. Johns County, *et al.*, does not address the State's

exhaustion of remedy problem. *In re Hospitality Ventures/Lavista*, 314 B.R. 843 (Bankr. N.D.

Ga. 2004), contains an excellent and exhaustive discussion of the preclusive abstention cases,

section 505(a) discretion for abstention and impossibility of discretion in precluding abstention.

> Given all of this evidence of Congressional intent and the absence of any express
> language granting discretion to abstain, the Court cannot conclude, from the use
> of the ambiguous word "may," that § 505(a) authorizes discretionary abstention
> other than what § 1334(c)(1) permits.

*Id.* at 859-60.

So what of the application of 28 U.S.C. section 1334(c)(1)? *Hospitality Ventures*

answers this issue in concluding:

> The Court holds that 28 U.S.C. § 1334(c)(1) does not allow permissive abstention
> with regard to § 505(a) relief if there is no alternative forum to decide the dispute
> and that § 505(a) does not permit a bankruptcy court to decline to exercise
> jurisdiction other than under § 1334(c)(1).

314 B.R. at 864. *Security Farms v. International Brotherhood*, 124 F.3d 999 (9th Cir. 1997),

reiterates this principle in holding:

> Abstention can exist only where there is a parallel proceeding in state court. That
> is, inherent in the concept of abstention is the presence of a pendant state action in
> favor of which the federal court must, or may, abstain. *See, e.g., In re S.G.
> Phillips Constrs., Inc.*, 45 F.3d 702, 708 (2d Cir. 1995).

*Id.* at 1109-10. Other taxing authorities have also raised the exhaustion of state remedy issues

and the failure of the debtor to timely file statutory appeals of the assessment and/or tax, thus

9

foreclosing an available state forum. The bottom line under 28 U.S.C. section 1334(c)(1) is simply that abstention is not legally available because no parallel state forum exists to decide the tax issues.

C.     Adversary Proceeding and Non-Joinder

Citing *Metromedia Fiber Network Inc. v. Various State and Local Taxing Authorities* *("Metromedia")*, 299 B.R. 251 (Bankr. S.D. N.Y. 2003), for the proposition that an adversary proceeding must be filed to challenge a tax or assessment under section 505, the Florida tax authorities reason that Florida statutes govern each assessment and tax issue and sec. 194.181(2), Florida Statutes, requires that in any case brought by the taxpayer contesting its assessment, "the county property appraiser shall be a party defendant." A careful reading of *Metromedia* reveals that decision does not at all address the necessity of filing an adversary proceeding under Rule VII to determine tax liability involving section 505(a). Indeed, *Metromedia* involved twelve adversary proceedings commenced by the debtor under section 505, and therefore Federal Rule of Bankruptcy Procedure 9014 was not implicated. Indeed, the adversary proceedings were dismissed under the doctrine of sovereign immunity. I also note *Metromedia*'s conclusion that the decision regarding *in rem* and *in personam* jurisdiction is clearly at odds with *Hood, supra*, which holds: "Here, however, the bankruptcy court's *in rem* jurisdiction allows it to adjudicate the debtor's discharge without *in personam* jurisdiction over the state." *See Metromedia*, 299 B.R. at 272-74. *Hood* also concludes the debtor may proceed to exercise its *in rem* jurisdiction by motion under Rule 9014 as a contested case, which satisfied all due process requirements. I see no difference in the bankruptcy court's *in rem* jurisdiction on objections to claims described in *Gardner* and the *in rem* holding in *Hood* on dischargeability of a debt.

10

The simple fact is that since there is no procedure proscribed in section 505(a), Federal Rule of Bankruptcy Procedure 7001 does not list resolution of a creditor's claim as an adversary proceeding. *See Hood*, 124 S.Ct. at 1914; *In re Carson*, 227 B.R. 148, 149 (S.D. Ind. 1998); *In re Whelan*, 213 B.R. 310, 313 (Bankr. W.D. La. 1997) (holding a determination of debtor's tax liability should be made under Bankruptcy Rule 9014, which specifically incorporates specific provisions of Rule VII, including discovery provisions, entry of judgment, etc.).

As to the issue raised in the Florida County memorandum that the tax assessor is not joined as a party, I find that argument specious. The Trustee's motion to determine the tax liability through the Fifteenth and Sixteenth objections to claims serves not only the local tax collectors but the assessor as well. The entire local entourage involved in the assessment and the tax is thus before the Court, and therefore all due process requirements are satisfied.

D.    Venue

The Florida memorandum asserts the tax disputes should be transferred to the bankruptcy court of the Middle District of Florida for resolution in order to satisfy the holding and criteria of *In re Hillsborough Holdings Corp.*, 146 B.R. 1008 (Bankr. M.D. Fla. 1992), to wit:

1. Location of the Plaintiff and the Defendant.
2. Availability of subpoena power for unwilling witnesses.
3. The ease of access to necessary proof.
4. The expense related to obtaining willing witnesses.
5. The enforceability of any judgment rendered.
6. The ability to receive a fair trial.
7. The state's interest in having local controversies decided within its borders by those familiar with state law, and
8. The economies of the estate administration.

*Id.* at 1011.

Applying the above factors, I determine transfer of venue is not necessary for reasons set

forth below, as many of the *Hillsborough Holdings* factors can be avoided or the burdens lessened considerably for all parties, especially with respect to factors such as access to proof, expense, fair trial, state interest in uniformity and economies of administration can be avoided or burdens lessened considerably for all parties.

An affidavit by Morgan Gilreath, property tax appraiser for Volusia County, Florida, made on behalf of himself and the other five Florida counties, asserts that under the cost approach (which is rejected by debtor's value witnesses, who adopted a market value approach), the available information is in each respective county office, the cost of witness travel to Delaware would be expensive and also inconvenient and Florida law on value will apply and a Florida judge who is familiar with Florida law *ad valorem* tax concepts would be better able to conduct and decide the valuation issues. In sum, the Florida county appraisers argue that they would be disadvantaged by having to make their presentation to the Delaware bankruptcy court.

The plea for allowing Florida county appraisers to testify from or in a Florida venue has merit. Some suitable alternatives may satisfy that issue. Rather than transfer venue to the bankruptcy court in Florida, this Court may allow each Florida appraiser to file a sworn declaration in question and answer format with this Court before trial, and then have each witness available by telephone to respond to any cross-examination by counsel for the Liquidating Trust. After cross-examination, Florida counsel would then have the opportunity to conduct any redirect examination of the witness. Another option is that the testimony of each Florida appraiser could be submitted by deposition arranged between counsel for each party so that the expense of travel to Delaware of each witness would be eliminated.

12

E.    The Proper Standard for Fixing Assessment.

Memoranda filed by Texas, Tennessee, together with the Florida authorities, state the

2003 assessments were created using the "sales approach" applied to data submitted by the

debtor; while the Trust's witness's "appraisal approach" is based on a simple nationwide

valuation of fair market value (willing seller, willing buyer, neither under any compulsion) and

includes the bankruptcy liquidation sale of assets.

Based upon the memoranda and affidavits of the respective parties, the Court has

sufficient information at this time to determine which appraisal method is acceptable for fixing

the tax assessment. Each tax authority must enjoy and apply a uniformity of assessment within

its tax jurisdiction. I adopt the rationale set forth in *Metromedia*, which rightly held:

> The problem with the debtor's "streamlined," unified approach to determining the
> "fair market value" of all of their Taxable Property in multiple taxing jurisdictions
> using a single methodology or combination of methodologies is that the resulting
> uniform valuation may produce results which are highly anomalous and
> discriminatory vis-a-vis other similarly situated taxpayers in the various taxing
> jurisdictions. Moreover, all of the defendants employ their own individualized
> schemes and methodologies for allocating the burden of taxation amongst all of
> the taxpayers in their respective jurisdictions. Even if, as the debtors assert, all of
> the defendant tax jurisdictions purport to utilize a concept of market value in the
> assessment process, the methodologies used are bound to differ. Any uniform
> valuation of the debtors' Taxable Property determined by this Court is bound to be
> at variance with state or local methodologies mandated by local law or practice,
> and with assessment valuation by the defendants of other taxpayer properties
> within their respective jurisdictions, producing disparate and discriminatory
> results.
>
> Uniformity in the laws governing bankruptcies is constitutionally mandated in
> Article I, Section 8, Clause 4; but uniformity in taxation is not. Nothing in the
> Constitution or the Bankruptcy Code entitles a debtor to uniform property tax
> determinations in differing tax jurisdictions, and nothing in federal law entitles the
> federal courts to impose uniform taxation schemes or methodologies on state and
> local governments.

299 B.R. at 283. Use of the nationwide appraisal standards is at variance with each State's methodology, and thus is not an appropriate valuation method.

Moreover, in Tennessee's case, and probably others, there was substantial write down of value between 2002 and 2003, which was submitted to tax assessment authorities by Cable & Wireless and accepted by those authorities.

Finally, Texas properly notes that use of Savvis's purchase at a liquidation sale a year after the 2003 assessment is not only remote in time, but as Tennessee states, use of the Savvis, Telegent and Genuity sales were made within bankruptcy liquidation context, which does not satisfy the willing seller/willing buyer test, neither under any compulsion to buy or sell concept, and therefore would be inadmissible evidence.

Further, the two affidavits filed by the Trustee of Don Schmitt and Alan Dalass and Mr. Schmitt's testimony detail the Trustee's appraisal method. Mr. Schmitt states: "Tax assessors generally use the cost approach, applying a depreciation schedule to the original cost of the property subject to property tax, to obtain an assessed value from which to calculate the appropriate property tax due from the taxpayer." Mr. Schmitt criticized such local methods, and as described above, embarked on a nationwide review of oversupply of telecommunication assets which he claims greatly inflated the value of assets. This approach sets local uniformity of tax assessment and tax on its head. I further note the Savvis/Debtor sale, which he states was at a competitive auction, simply does not satisfy the willing seller test. Mr. Dalass also used the Savvis sales data and one of Nortel to reallocate the assessment and thus deviate from uniform local practice.

In *ANC Rental*, Judge Walrath ordered abstention because, among other reasons, "In the

14

context of section 505, abstention is often used where the uniformity of assessment is an issue."

316 B.R. at 159 (citing *Metromedia*, 299 B.R. at 281 and *In re AWB Assocs., G.P.*, 144 B.R. 270,

276 (Bankr. E.D. Pa. 1992)). *AWB Assocs.* held:

> The valuation of property for purposes of determining property taxes must be
> consistent with state law principles, as the valuation is merely part and parcel of
> the adjudication of the tax due and owing, a question controlled by state law . . .,
> the bankruptcy court gives full faith and credit to the law of the state upon which
> the tax is based.

144 B.R. at 278 (citing *In re Fairchild Aircraft Corp.*, 124 B.R. 488, 492 (Bankr. W.D. Tex.

1991)); *see also Connecticut Performing Arts Foundation v. Brown*, 47 B.R. 911, 917-18 (D.

Conn. 1985) (holding that although the bankruptcy court properly accepted jurisdiction over the

dispute concerning the validity of a tax exemption against a claim of state sovereign immunity, it

improperly applied stringent Connecticut law in mandating the grant of the exemption).

Finally, the *AWB Assocs.* case, specifically held that property located in New Jersey is

subject to the substantive law of New Jersey and that property assessments made by the proper

tax authority are presumed correct. 144 B.R. at 278-79. In sum, to overcome a presumption of

correctness, the debtor must apply state law, not national standards. I see nothing in the Schmitt

testimony that satisfies local assessment standards. It must be reiterated that in order to use the

sale of the assessed property or like property to determine the property's value for tax assessment

purposes, the sale must be a normal, fair, arm's-length transaction between parties who are

willing, but not forced to sell or buy. *See Sales Price as Basis for Tax Assessment*, 89 A.L.R.3rd

1136, 1139-1141, § 6, and 7(b) (Receiver's Sale); *Nelson v. State Tax Comm.*, 29 Utah 162, 506

P.2d 437 (1973) (noting that the price paid for property for which there was a limited market and

sold in bankruptcy proceedings, warranted rejection of the sales price in valuing the property for

tax assessment purposes).

The sworn testimony of Stephen Barreca, presented by the Florida taxing authorities, is persuasive. He states that sales involving a bankruptcy do not meet the willing seller test because there is an element of compulsion in the sales transaction, even if it is an auction sale. He also gave the opinion, contrary to Schmitt's testimony, that the telecommunications market was not depressed in 2003, giving the example of Nortel's gross revenues in 2003 of $10,193,000,000. I would also add that "Fair Market Value" means neither panic value, auction value, speculative value, nor a value fixed by depressed or inflated prices. In fact, a market may be established only where there are willing sellers and buyers in substantial numbers. *See In re Board of Water Supply of City of New York*, 14 N.E.2d 789, 792-93 (N.Y. 1938). That is why the C.A. Turner Telephone Plant Index (2003),[6] introduced by Orange County through its tax assessor, is a valid test for the market rather than the meager sales, including bankruptcy sales, used by Schmitt to devalue the market by 97% after he had presented renditions to the tax authorities based on a cost approach less depreciation. I therefore reject the testimony of Schmitt, as fundamentally flawed, based as it is on a confidential study, not presented in evidence, of Pricewaterhouse in conjunction with the 2004 sale of Debtors' bankruptcy assets to Savvis, and the bankruptcy liquidation sale of telecommunications assets in the Telegent chapter 11 case and one non-bankruptcy sale of assets to Nortel, which Barreca opined should be disregarded because it was not a sale at retail, but was for resale of remanufacture of switches. Moreover, Schmitt conceded that he never reviewed the bankruptcy cases filed on which sales he relied, including how they

---

[6] Since the passage of the Telecommunications Act of 1996, indexes were developed for and provided to the telecommunications industry in general. Copies of these schedules were presented in Exhibit "B" of the Florida tax appraiser's testimony.

occurred, who was involved and what the underlying factors were at the time of the sale.

I therefore give weight to the appraisal methods utilized by the local and state tax assessors. *See In re Mayfair Mills, Inc.*, 295 B.R. 827 (Bankr. D. S.C. 2002); *In re Custom Distribution Services, Inc.*, 216 B.R. 136 (Bankr. D. N.J. 1997); *In re Liuzzo*, 204 B.R. 235 (Bankr. N.D. Fla. 1996) (holding that the bankruptcy court should follow state law); *Fairchild Aircraft Corp.*, 124 B.R. at 492.

In sum, the Liquidating Trust has failed through competent and reliable evidence to overcome the *prima facie* validity of each of the tax claims and the objections of the Trust are therefore rejected and overruled. I determine this finding is consistent with Federal Rule of Evidence 702, Testimony by Experts, where Schmitt's testimony does not assist the trier of fact because he does not present reliable, credible evidence of fair market value by his use of alleged comparable sales which are not representative of the market. *See, e.g., In re Broad Associates Ltd. Partnership*, 110 B.R. 632, 637 (Bankr. D. Conn. 1990).

For the reasons set forth above, I conclude:

1.    The defense of sovereign immunity is not validly asserted by the state or local taxing authorities;

2.    Abstention under 28 U.S.C. section 1334(c)(1) is not warranted;

3.    This Court has jurisdiction to decide the matters presented by the Fifteenth and Sixteenth Objections to Claims under section 505(a);

4.    Evidence by the Liquidating Trust of a nationwide market value standard would be contrary to the uniformity of tax assessment procedures by local authorities, and use of bankruptcy liquidation sales is not admissible;

17

     5.     Each State's assessment practice set by statute or otherwise is the acceptable method of valuation and assessment, and is presumed correct; and

     6.     The Fifteenth and Sixteenth Omnibus Objections to Certain 2003 Property Tax Claims listed on Exhibits "A" and "B" will be denied and each proof of claim will be allowed as filed.

A separate order shall enter.

DATED this 24th day of June, 2005.

BY THE COURT

HONORABLE JOHN L. PETERSON
United States Bankruptcy Judge

18